Good morning, Your Honor. Good morning, Your Honors. May it please the Court. My name is Catalina Gracia and I represent the petitioner, Mr. Pacheco. I'd like to reserve two minutes of my time for rebuttal. Your Honors, a central issue in this case is whether the BIA erred in holding that the petitioner failed to establish that the government of Guatemala is unable or unwilling to protect him. In this case, the BIA held that the petitioner did not establish that the government could not protect him, and further, that such a claim was waived because it wasn't challenged. This is factually erroneous. First, because the issue was clearly raised by the petitioner in his BIA brief. Additionally, the issue was raised at the trial level before the immigration judge. At the trial level, the petitioner credibly testified that the police... Well, wait a minute. There were two trials there and two appeals to the BIA, right? That's correct, Your Honor, yes. Which one are you talking about now? Your Honor, I am referring to the first trial, to the original case before the immigration judge. At that hearing, I believe it was a three-day hearing, the petitioner credibly testified that the police of Guatemala are corrupt, they're bought by the gangs, and further, that making complaints to the police further places the petitioner or individuals in this protected class in further danger of their lives. Do you think maybe you need to address the protected... the particular social group first? Because if there's no particular social group, it doesn't matter whether they're unable or unwilling? Yes, Your Honor, and that was another issue in this case. The BIA and the immigration judge held that the petitioner had failed to establish a particular social group. However, based on the evidence in the record, petitioner's testimony from an expert witness on country conditions, the petitioner did establish a social group with particularity, immutability, and a particular social group that's socially distinct. As to particularity with regard to the petitioner's stated social group of nuclear and extended family, the lower court held that the group was amorphous and it lacked clear boundaries, and therefore, there was no particularity. However, all appellate courts have, at various times, held that family is a protected ground, and in this case specifically, the family unit is defined by bloodline and by law. Throughout the case, the petitioner references specifics as to uncles who suffered violence in Guatemala. He references a specific uncle by name that kidnappers refer to at the time that he was held in captivity and referenced the harm that he suffered a direct result of his relationship to his uncle, and there was mention of some in-laws. However, that's also defined by law. There's clear parameters here as to the particularity of this. The only mention of an in-law, as far as I know, was the husband of his sister. He was the reason for any of the violence, so it seemed to me that in-laws were not encompassed in the extended family as you described it, but it doesn't really matter very much. You can do it either way, I suppose. That's correct, Your Honor. There was no other in-law, right? The only in-law was the husband of the sister. Right, and the reference there was that he was a, or the relevance there, was that he's a police officer. There was no suggestion that that was the reason for the violence. It seemed to me that it was cut off at the sister. The sister was the one who was described. That's correct, Your Honor. Yes, the sister, and the sister was told by the police that she shouldn't report it because nothing was going to come of it. I have a question. What is the family group that you're advocating here? Yes, the family group. Is it amorphous, or does it include cousins, or second cousins, or uncles? I guess uncles, but what else? Your Honor, in the context of a particular social group, it must be considered in the context of the particular country. In this case, Mr. Pacheco explained that he grew up with his extended family and was close to them, so in this particular case, this family group is defined by close relatives, so nuclear and extended family, including his cousins, his aunts, family that he essentially grew up with, perhaps not, a definition wouldn't be a nuclear family that we envision here in the United States, but taken into context of where he grew up in Guatemala, yes, we'd be referring to family outside of the nuclear family. However, again, that's clearly defined by, it's limited by bloodline. Yes, there are different last names here, but that's also something that happens culturally in other countries, the mix-up of last names, but still, there was a definition here. If it's measured by bloodlines, does it include in-laws? Well, no, Your Honor, I'm sorry, to correct myself, I include the definition of family to be boundaries imposed by nature and by law, so I believe that based on the reading of these cases and the reading of what's considered a family for particular social groups, marriage does include, is included in that definition. However, I don't think that it's particularly relevant in this case because there was only one reference made to an in-law, Your Honor, and moving on as far as social distinction to this particular social group, I think that Petitioner's family is socially distinct in Guatemala. This family has endured at minimum eight various acts of violence against family members that resulted in death, specifically one cousin was shot over 80 times. In a country the size of Guatemala, the size of, let's say, West Virginia, this family stood out for the harm that they had suffered and the fact that they had various family members that were in law enforcement since from about 1990 to 2012, this family has endured violence and so that alone makes them socially distinct from other families in Guatemala. And the immutability factor is, you know, evidence here, he can't change his relationship to his family, that's something that he simply can't change. And so, based on the fact that he meets the three prongs of the particular social group for family, I believe that he did establish a protected ground and that the BIA and the trial judge erred in finding that he had not established a protected ground. Okay, do you want to go back? Then you were going to the unable and unwilling and I I'm sorry, Your Honor? You're going to the unable and unwilling and I interrupted you. Yes, Your Honor, thank you. So, to assume that a protected ground was established, the trial judge and the BIA found that the petitioner had not established that the government of Guatemala cannot protect him, there's evidence in the record from credible testimony by the petitioner and uncontradicted testimony by expert witnesses that the government of Guatemala is unable and unwilling to protect the petitioner. The petitioner's family, as well as the petitioner attempted to report or had reported these incidents to the police and were told that nothing could be done to help them. At one point, they were told that their best bet was just to pray to God and hope that that would provide sufficient protection. The expert witness testified that the expert country conditions expert testified that it's futile to report any of these incidents to the police in Guatemala. They're either you know, working closely with the gangs or they themselves are afraid of the gangs. I have a question about that. The BIA said that the respondent indicates that the wife and son and wives and children of the uncles are living there and have been undisturbed. How do we look at that? Yes, Your Honor. Well, the family has had to move around to remain safe. And part of what has kept the family safe is the fact that the primary targets of this violence against the family have moved away. So, well, it is relevant that there is family that has been able to remain safely in Guatemala. They're not similarly situated to the defendant. They didn't have the close relationship to the uncles that the and they further didn't have the previous acts of violence against them. The sister's house was attacked. One of the things that confused me was that, for example, the statement that nothing had happened to any of the family in the meanwhile seemed to leave out the fact that the sister's house was attacked and she had to leave. That was after the petitioner left Guatemala, right? Yes, Your Honor. And as a result of that, the sister and the husband separated because there was concern that the fact that he was a police officer, this family relationship was causing attention to be drawn to the... At any rate, it wasn't true that nothing happened to anybody in the family after he left. In fact, the sister's house was firebombed or what happened to her? Yes, Your Honor. That's correct. But that could have been due to the fact that she was married to a police officer. Okay. And so, but it wasn't that statement that they were safe after he left was not true. Correct, Your Honor. And they continue to move around and from... They're unable to remain in one place and be safe, but they're not similarly situated to similarly situated to the petitioner. Their situation is different. They didn't have the, history that the petitioner did. They hadn't been kidnapped and endured the conditions and the threat that the petitioner had endured as a result of his relationship with his uncle and the close association he had with them that was part of what resulted in him being targeted. And so, while it's relevant that other family members are able to live, so to speak, safely in Guatemala doesn't necessarily mean that the... At any rate, the relocation issue is a separate issue which hasn't been gotten to here yet. If he were, if they were found to be past persecution, then you'd have to, then the government would have the responsibility to demonstrate that he could safely relocate. And then that would be a separate issue, but we haven't gotten there yet. I mean, that's a relocation issue, right? In other words, she, but she was attacked after he left. She was attacked. The sister was, or her home was shot up. Yes. She was attacked after the, after the petitioner had left, several years after the petitioner had left. Yes. Okay. I think your time is up and we will give you a minute. Thank you, Your Honor. Sorry. All right. Good morning. May it please the court, Sharon Clay on behalf of the government. The court should deny the petition for review. The board found that the petitioner failed to challenge the IJ's dispositive findings regarding his withholding and cat claims, and he raised no challenge to the board's waiver. That's just simply not true because he did challenge them in the first go-round and there was a specific remand on specific subjects which were not the withholding, the unable or unwilling or the cat issue. And so what was the point? Why would he have to do it a second time? Nothing happened that happened on the remand was relevant to those issues. Well, it was stating the obvious that the board had made a determination. Yes, sir. Yeah, this is Gene Soutter. Can you hear me? Yes, I can. I can't see the speaker. Can you see the speaker? She's not visible. Oh, it's on the phone. Okay. Can you hear me? I can hear you. Yeah, but I can't see you. Okay. Oh, yeah. Did you have a question? I had a question. Could you finish? Okay. My question is, what is the authority for the fact that he had to a second time exhaust when he already did it? And when nothing that happened in the district in the before the IJ was relevant to those issues? What would be the utility of that? What good would it do anybody? And the board had already addressed these questions and nothing had happened. True. That's true that I mean, that is true. I was just going from the position that the board actually indicated or the it was the board's belief that the issue had been waived because it was not raised. The board was wrong. They seem to have forgotten about the first proceeding altogether. Well, that very well may be true. But even assuming that the issues were preserved, and had not been waived, the court should still deny the petition for review because the particular social groups that petitioner identified, the nuclear and expanded family and relatives of police officers lack particularity. The agency determined that the particularity was lacking because there was no clear delineation as to who fell within the group. Part of the reason that there was some confusion about it is because petitioner as discussed defined the family as marriage. But the expert that appeared at court actually defined a family, not just simply by blood, but also by closeness. Further hindering this particular argument. The board can make a conclusion as to whether it involves the in-laws or it doesn't involve the in-laws. I mean, I don't but and probably it doesn't in the sense that the delineation here was really by who was aided by who it was that was actually attacked. And as it turned out, none of the in-laws were themselves attacked. So it appeared to me that it was essentially the group of people who relationships that were attacked, which were cousins, and aunts and uncles, and siblings. And that's the ordinary definition of an extended family. It seems to me we're getting off the nitpicking to think that we need to know precisely who's and if we need to know whether it's in-laws or not in-laws, the board can decide it either is or isn't in-laws. But it's certainly not all that confusing. Most people talk about their extended family. They know they're talking about. That's correct. But here in this particular case, petitioner himself has had some confusion with identifying his own relatives. If you look at the record, the petitioner actually identified the young person that assisted him after his kidnapping. He referred to that individual as both a stranger, a relative, and a friend. And he ultimately decided that the person was a friend, even though he didn't even know him. Then with regard to his friends, Yogi and Oscar, the two that came from the United States to visit their mother to make sure she didn't get kidnapped. Petitioner initially testified that those two individuals were relatives as well, but they ended up not being relatives either. So one of the concerns of the agency... He didn't say relatives. He said extended family. Well, they weren't a family either. They were friends. He says that for a friend... Well, they're not in a social group. I'm sorry. I missed what you were saying. Because they're not in the social group. But what's the relevance of that? Well, the relevance is he tried... Once everybody's in the brief before this court, petitioner said it's common knowledge that a neighbor or a friend does not constitute a relative. But he testified to the court that he actually had considered people who were not what other people think are commonly relatives. He believed them to be relatives. So that's the argument that I'm making is that he actually looked at people that weren't... But they're not in the social group. Why does that make the social group amorphous? Because it's subjective. If the particularity of the group becomes subjective, then the particularity... You no longer meet that definition. And based on the fact that he actually had attenuated relationships with people who weren't actually relatives, then who can be sure who falls within the group that he calls family or extended family? Because he's also included people who don't commonly fit within that definition. You can be sure of it because they're not related by blood, so they're not his family. I don't understand it. He can say what he pleases. But the group includes his family. He didn't claim those people were attacked because of their connection to him or his uncle or anything, right? No. No, he didn't. Well, they did. He did actually refer to the other individuals, Yogi and Oscar, as having been attacked. And based on a record, it could be that tenuously claiming people that aren't relatives as relatives supposed to reclaim could be one of the fears that the agency could have felt under these particular circumstances. And although, like you said, there is a common idea, one of the definitions that was raised in Petitioner's Brief was that extended family usually allotted to somebody who was a family outside of your nuclear family, but they were still within the same household. So there's not a pure cut delineation about who would constitute extended family or not extended family. By the Webster's definition in Petitioner's Brief, the extended family would have to be somebody within the same household. So based on Webster's dictionary, based on Dr. Bierman's testimony, a person can pick or choose or can envision who their family members are based on closeness, based on marriage, based on proximity. But it's still subjective. It's not separate. Let me ask you this. Would you not consider uncles and cousins as part of the family? Yes, I would consider them a family. But even when you have a particular social group of people who have immutable characteristics, it can't just be unlimited family. And I don't mean number wise. It's just within a society, can a person actually delineate who is included in that group? And like Petitioner said, it's based on cultural and social context. But there hasn't been any evidence specifically in his town who constitutes those members within the family. But the people who were attacked were uncles, right? Or people who... Yes, they were extended family and no nuclear family members. Well, the sister had her house shot up, but he actually said it had nothing to do with his uncle that had to do with her husband. So technically, arguably, only his extended members are the ones who have been targeted by the gang. They were cousins, uncles, and aunts, right? Yes. And that's who they were. And that's what an ordinal or I think an extended family is. Yes, but not everybody necessarily considers the in-laws as their family members. I mean, it could be different and subjective among... No, none of those people were in-laws. But what... All right, go ahead. But assuming the issues to... Moving on to unable and willing, the dispositive determination that the government is able or willing to protect him is supported by substantial evidence in the record. The record actually shows that the Guatemalan government has taken efforts to control gang violence, mainly in that petitioner... Just a minute. The standard is unable or unwilling. So unwilling is the only standard. Yeah, I'm saying the government was saying that he failed to show that he was unable or unwilling to protect him. That's the standard. I just said it in reverse. I'm sorry. I just said it, I guess it in a reverse negative that he was able to... Either unable or unwilling. So it's... Yes, unable or... They couldn't do it, which appears they couldn't because eight people got killed. Why isn't that sufficient? Well, the substantial evidence that records that shows otherwise is that the reason why he actually has a claim is because the police efforts of his uncle. There is no evidence in the record that there's any scarcity of resources. The record actually shows that the police were investigating the crimes of Elvin, Pedro, Gloria, and his cousin that were shot 80 times. The fact that the... That the two uncles that were police that were trying to do this were killed. Correct. But it's not clear, but in terms of the extended... They certainly became unable at that point, even if they were willing originally. Well, the immigration judge also said in the record that there was some evidence or some inference that could be drawn that the petitioners, some of the extended family members, were actually involved in gang activities. And they weren't being targeted because it was on account of their proximity to him, but rather because of their own activities. That includes the fact that the petitioner admitted that he had a cousin and a personal friend of his that was trying to recruit him into the gang, and they were willing to harm his family over the recruitment. How is that relevant to the unable or unwilling? No, it was... No, it's relevant to the actions or the criminal activity of the individuals called into question what was the government's obligation in those particular circumstances. But the record clearly shows, based on even on his own testimony, that the police engaged in extensive investigation in the different deaths of his family. So, the government's obligation, if somebody's in a gang, they don't have any obligation to investigate their death? Well, true, but the fact that several members of the family were actually killed doesn't necessarily mean that they were all killed for the same reason. Like I said, the police launched investigations into the recent murders of his uncles and cousins. He's making the argument that they're unable or unwilling to protect him. The fact that they're actively engaged in going after gang members, which is the reason why he suspects that he should be harmed, provides the basis that the government is willing and able to protect him. As he said, his brother-in-law was a police officer. His uncles were police officers. They were all willing to protect him while he was there in Guatemala. So, based on the evidence, based on his testimony and the record evidence that the police were doing their job, tends to cut against the fact that he says that they are unable and unwilling to protect him. Okay, you're over your time. So, thank you very much for your argument. All right, thank you. Gracia, we will give you one minute. I was curious about the suggestion that he was regarding people who are not his relatives as part of the extended family, and his records support that. Your Honor, the comments made by the government regarding the individual who assisted the petitioner after he had endured kidnapping, rape, had been beaten for several days, perhaps the individual that he encountered right after that incident that essentially took him to safety, it's understandable that that memory or that interaction may have left him with confusion. Nonetheless, the only individuals who are in this protected ground are family members. So, whether that individual was a social group, it doesn't change the nature of the proposed group. It doesn't change the fact that this group is clearly defined by bloodlines or by lines established through the law based on marriage or other legal relationships. I believe here that the petitioner did establish that he was persecuted based on a particular social group. I further believe that the record supports that the government of Guatemala is either unable or unwilling to protect him. Based on expert testimony, this unwillingness of the government is grounded in scarcity of resources, intimidation, and terrorism of police officers, prosecutors, judges, and then a general indifference to crime in Guatemala because it's so prevalent. Whether they try to assist or not, ultimately, the law enforcement and the government of Guatemala is unable to assist these people, and that's what resulted in the petitioner's family having suffered the loss of so many of its members, including, like I mentioned earlier, one individual who was shot over 80 times. There's no record that there was any conviction or any real investigation done to figure out what happened. Thank you. The case of Arias Pacheco versus Barr is submitted, and we will take a short break.
judges: Siler, Berzon, Lee